UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DANIEL PERSON                           :
                                        :
        v.                              :        C.A. No. 13-524S
                                        :
CAROLYN COLVIN, Commissioner            :
of the Social Security Administration   :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

        This matter is before the Court for judicial review of a final decision of the
Commissioner of the Social Security Administration ("Commissioner") denying Social Security
Disability Insurance ("SSDI") and Disability Insurance Benefits ("DIB") under the Social
Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint on July 16, 2013
seeking to reverse the decision of the Commissioner.  On April 30, 2014, Plaintiff filed a Motion
to Reverse the Decision of the Commissioner.  (Document No. 11).  On July 30, 2014, the
Commissioner filed a Motion for an Order Affirming the Commissioner's Decision.  (Document
No. 14).  On August 13, 2014, Plaintiff filed a Reply Brief.  (Document No. 15).

        This matter has been referred to me for preliminary review, findings and recommended
disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the
parties' submissions and independent research, I find that there is substantial evidence in this
record to support the Commissioner's decision and findings that Plaintiff is not disabled within
the meaning of the Act.  Consequently, I recommend that the Commissioner's Motion for Order
Affirming the Commissioner's Decision (Document No. 14) be GRANTED and that Plaintiff's
Motion to Reverse the Decision of the Commissioner (Document No. 11) be DENIED.

# I. PROCEDURAL HISTORY

Plaintiff filed applications for SSDI (Tr. 187-193) and DIB (Tr. 180-186) on June 19, 2009 alleging disability since May 3, 2009 (Tr. 180, 187) due to depression, anxiety, bipolar disorder, anger management, back problems, sleep problems and diagnosed as HIV positive. (Tr. 30). The applications were denied initially on January 14, 2010 (Tr. 83-86, 90-92) and on reconsideration on August 23, 2010. (Tr. 90-95). On September 28, 2010, Plaintiff requested an Administrative hearing. (Tr. 96). On October 19, 2011, a hearing was held before Administrative Law Judge Martha Bower (the "ALJ") at which time Plaintiff, represented by counsel, a vocational expert ("VE") and a medical expert ("ME") appeared and testified. (Tr. 27-54). On April 6, 2012, a supplemental hearing was held to include documents that were missing at the time of the initial hearing in October. Plaintiff did not attend the supplemental hearing. (Tr. 55-77). The ALJ issued an unfavorable decision to Plaintiff on April 11, 2012. (Tr. 12-26). The Appeals Council denied Plaintiff's Request for Review on May 14, 2013, therefore the ALJ's decision became final. (Tr. 1-4). A timely appeal was then filed with this Court.

# II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred because she: (1) did not give adequate weight to the treating source opinions and gave excess weight to the state agency non-examining consultants; and (2) failed to follow the proper standards for evaluating the Plaintiff's credibility.

The Commissioner disputes the Plaintiff's claims and asserts that the ALJ's decision is supported by substantial evidence on the record.

### III.     THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.      THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.      Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.   20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(c).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.    Developing the Record**

The ALJ has a duty to fully and fairly develop the record.  Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory

right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in

the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence

of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

(1)     The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2)     Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3)     Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4)     Treatment, other than medication, for relief of pain;

(5)     Functional restrictions; and

(6)     The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2.     Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony

requires that the testimony be accepted as true.  See <u>DaRosa v. Sec'y of Health and Human Servs.</u>, 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See <u>Smallwood v. Schweiker</u>, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." <u>Foote v. Chater</u>, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.  APPLICATION AND ANALYSIS

Plaintiff was thirty-one years old on the date of the ALJ's decision.  (Tr. 12, 180). Plaintiff was primarily in special education and completed the twelfth grade through a group home.  (Tr. 34).  Plaintiff lived in a group home and was discharged when he turned eighteen years old.  (Tr. 31).  Plaintiff was receiving SSI benefits when he was a child and suffered from depression, anxiety, bipolar, lashing out and bursting out.  <u>Id.</u>  Plaintiff previously worked as a baker at a fast-food restaurant and a cashier at a gas station.  (Tr. 257).  Plaintiff's date last insured is December 2015.  (Tr. 30).

On July 31, 2009, Plaintiff met with Adam J. Cox, Ph.D., at the request of Disability Determination Services for a psychological evaluation.  (Tr. 20).  Plaintiff told Dr. Cox that he had bipolar disorder and anxiety since birth and that his emotional problems made it difficult for him work with or around other people.  (Tr. 341).  Plaintiff complained of trouble falling asleep at night, easy distractibility, intermittent poor ability to focus, difficulty organizing, and problems with procrastination.  (Tr. 342).  Upon examination, Dr. Cox found that Plaintiff

presented as anxious and exhibited minor restlessness, but his communication was coherent and goal directed, and there was no indication of flight of ideas.  Id.  Dr. Cox noted that Plaintiff was not working at the time because he quit his job three weeks earlier because the shifts at the Dunkin Donuts were too long.  (Tr. 341).  Dr. Cox diagnosed Plaintiff with Bipolar I  Disorder and Generalized Anxiety Disorder, and assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 40.  Id.

On November 9, 2009, Jeffrey Hughes, Ph.D., a non-examining state agency psychological consultant, reviewed Plaintiff's records and concluded that, despite his impairments, Plaintiff could remember both simple and complex instructions, could complete two- to three-step tasks, and would be able to relate to co-workers, customers and supervisors, but that frustrations from too many work demands could lead to problems with co-workers.  (Tr. 347).  Dr. Hughes noted that, although Plaintiff preferred to be alone, he could handle activities such as going to the library.  Id.  Dr. Hughes noted that Plaintiff has had numerous jobs for long enough periods of time to suggest that he was able to remember and follow instructions.  Id.

On December 11, 2009, Plaintiff went to the Providence Community Health Center walk-in clinic for treatment for a rash.  (Tr. 369).  Plaintiff indicated that although he was experiencing situational stress, his mood was good and his intermittent sleep disturbances had improved with Seroquel.  (Tr. 370).

On January 6, 2010, Plaintiff was examined by Dr. Okosun Edoro at the request of Disability Determination Services.  (Tr. 364).  Plaintiff complained of severe, long-term lower back pain.  Id.  He claimed that his pain was a seven or eight on a scale of one to ten in intensity, but that he did not go to a doctor and used only over-the-counter medications to alleviate his back pain.  Id.  Findings on examination were normal, as were the results of a lumbar x-ray.  (Tr.

363, 365). Dr. Edoro noted that Plaintiff's low back pain started insidiously without any trauma. (Tr. 364). Plaintiff's pain was not affected by walking, lifting or bending. Id. Dr. Edoro found that Plaintiff had a normal gait and was able to perform various physical tests without difficulty. (Tr. 365). Examination of Plaintiff's lumbar spine revealed no tenderness and full range of motion. Id.

Dr. Erik P. Purins, a non-examining state agency consulting physician, reviewed Dr. Edoro's report and other evidence in the record on January 12, 2010. (Tr. 367). Dr. Purins concluded that Plaintiff had no medically severe physical impairment. Id.

On January 20, 2010, Plaintiff was examined by Dr. David DelSesto at the Immunology Clinic at The Miriam Hospital. (Tr. 674). Dr. DelSesto noted that Plaintiff was handling his recent HIV diagnosis and doing "relatively well." Id. Plaintiff had no current physical symptoms. Id. On February 16, 2010, Plaintiff told Dr. Curt G. Beckwith, at the Immunology Clinic at The Miriam Hospital, that he did not have a problem with persistent anxiety, but only got anxious when he was nervous about a particular situation. (Tr. 677).

On February 2, 2010, after being diagnosed with HIV, Plaintiff was evaluated by Alix Stockwood, a nurse therapist at the AIDS Project Rhode Island. (Tr. 391-407). Plaintiff reported a history of depression, bipolar disorder and anxiety. (Tr. 398). Ms. Stockwood noted upon an examination of Plaintiff's mental status, that he described severe symptoms of anxiety, depression, anhedonia, sad mood, feelings of hopelessness and helplessness, panic attacks and social isolation. (Tr. 400). However, she noted that Plaintiff's impulse control was sufficient. Id. Ms. Stockwood diagnosed Plaintiff with a depressive disorder and bipolar II disorder and rated his GAF at 60. (Tr. 404).

On May 4, 2010, Plaintiff was examined at The Miriam Hospital by Dr. Sarah Bagley. (Tr. 679). Plaintiff told Dr. Bagley that he was tolerating his HIV medications well. <u>Id.</u> He indicated that he was planning to start exercising and was riding his bicycle. <u>Id.</u>

On June 18, 2010, Dr. R.C. Brown, a non-examining state agency physician consultant, reviewed Plaintiff's medical records and agreed with Dr. Purins' January 2010 assessment that Plaintiff had no medically severe impairment. (Tr. 408). On August 19, 2010, Dr. Litchman, a non-examining state agency psychological consultant, reviewed the medical records to date and concurred with Dr. Hughes' November 2009 assessment of Plaintiff. (Tr. 409).

On July 22, 2010, Plaintiff was examined at The Miriam Hospital for follow-up of his HIV infection by Dr. Brian L. Hollenbeck. (Tr. 681). Plaintiff was doing well on his HIV medications, with a viral load reduced to undetectable levels. <u>Id.</u> Plaintiff did not discuss any current mental issues. <u>Id.</u> Plaintiff was living independently and working as a cashier. <u>Id.</u> On October 27, 2010, Plaintiff returned to The Miriam Hospital Immunology Clinic for follow-up of his HIV infection. (Tr. 683). He was examined by Dr. Beckwith, who noted that Plaintiff reported he was "doing quite well." (Tr. 683). Plaintiff discontinued Zoloft and Seroquel but was going to start taking them again. <u>Id.</u> Dr. Beckwith noted that Plaintiff appeared to be in good spirits. <u>Id.</u>

On December 16, 2010, Plaintiff first met Gordon Cooper, then a licensed social worker. (Tr. 637-651). Mr. Cooper diagnosed Plaintiff with bipolar disorder and anxiety. (Tr. 650). Plaintiff's current GAF was assessed as 50, with the highest GAF assessment over the past year at 58. <u>Id.</u> On mental status evaluation, Mr. Cooper noted moderate anxiety and depression along with moderately poor judgment and concentration. <u>Id.</u> Mr. Cooper also noted Plaintiff as exhibiting moderately isolative and hyperactive behavior. (Tr. 646). On December 23, 2010,

Plaintiff told Mr. Cooper that he was doing fine other than experiencing a little headache, and he had not had any anger issues.  (Tr. 793).  Mr. Cooper noted that Plaintiff was in a good mood. Id.

On January 6, 2011, Plaintiff told Mr. Cooper that he had a good Christmas and New Years.  (Tr. 795).  On January 20, 2011, Plaintiff reported a "harrowing" encounter with an ex-girlfriend and discussed controlling his anger with Mr. Cooper.  (Tr. 796).  On February 10, 2011, Plaintiff told Mr. Cooper that his girlfriend discovered his HIV status and was mad at him. (Tr. 798).  On February 24, 2011, Plaintiff told Mr. Cooper that he had to move out from his girlfriend's apartment after she discovered messages from other women on his cell phone.  (Tr. 800).

On February 25, 2011, in a Case Management Assessment, Plaintiff indicated that all of his medical needs were being met and that he was looking for a psychological evaluation, but was not interested in other psychiatric services, wanted financial aid for housing and heating expenses and needed no educational or employment assistance.  (Tr. 656-660).  At that time, Dr. Cooper diagnosed Plaintiff with only an adjustment disorder with mixed anxiety and depression. (Tr. 664).  Plaintiff's only goals were getting a psychiatric evaluation, getting financial assistance and finding a good lawyer to help him with his SSI appeal.  (Tr. 663).

On March 17, 2011, Plaintiff told Dr. Cooper that he was looking for a part-time job as a baker, as being around a crowd of people made him anxious.  (Tr. 803).  Dr. Cooper observed that Plaintiff seemed to be in better spirits than usual.  Id.  On March 31, 2011, Plaintiff told Dr. Cooper that he had managed to stay out of "anger situations."  (Tr. 805).  On April 21, 2011, Plaintiff told Dr. Cooper that he missed his last two appointments because he had been

incarcerated because he missed several child support payments, but was released when the court determined that he could not afford to pay child support. (Tr. 808).

On April 27, 2011, Plaintiff went to The Miriam Hospital Immunology Clinic. Dr. Beckwith noted that Plaintiff continued to do very well overall. (Tr. 685). He was living with his family, receiving ongoing counseling and continuing to take Zoloft. Id. Dr. Beckwith noted that Plaintiff's mood was good. Id. Plaintiff had some complaints of lower back pain and fatigue. (Tr. 685-686).

On May 31, 2011, Susan E. Gagnon, a Psychiatric Clinical Nurse Specialist, conducted an Initial Psychiatric Medication Evaluation. (Tr. 666-668). Plaintiff reported that he cut the side of his wrist with broken glass after receiving his HIV diagnosis, and was struggling with depression and anxiety. (Tr. 666). He also reported prior sexual abuse by a family member, and struggling with memories of growing up in the Department of Child, Youth & Family system and juvenile detention and difficulty being around people. (Tr. 666-668). On examination, Ms. Gagnon noted that Plaintiff's mood was anxious and dysphoric, his affect was congruent with his mood, his judgment was fair, his insight limited, he had a decrease in appetite, his thought process was logical and linear and he indicated a history of anger outbursts and frequent periods of anxiety with occasional panic attacks. Id. Ms. Gagnon diagnosed Plaintiff with post-traumatic stress disorder, mood disorder NOS and impulse control disorder NOS and assigned a GAF score of 45. (Tr. 668). On June 20, 2011, Plaintiff told Ms. Gagnon that he was working a part-time job that required him to get up at 3:00 a.m., disrupting his sleep. (Tr. 669). Plaintiff reported no side effects from medication other than occasional fatigue. Id. He was currently worried that his partner might be pregnant. Id.

On May 26, 2011, Plaintiff told Dr. Cooper that he was working three to four days a week at a Dunkin Donuts, starting at 3:00 a.m. (Tr. 811). On June 2, 2011, Plaintiff reported doing well at work and that he was offered more hours but did not want to increase the amount of work he was doing because he was satisfied with his current home life. (Tr. 812). On June 23, 2011, Plaintiff told Dr. Cooper that he had really good news because his girlfriend was pregnant but had tested negative for HIV. (Tr. 814). Plaintiff also reported that work was going well. Id.

On June 22, 2011, Plaintiff was examined by Dr. Beckwith at the Immunology Clinic at The Miriam Hospital. (Tr. 689-690). Plaintiff reported feeling well and had no specific complaints. (Tr. 689). HIV testing on Plaintiff's girlfriend was negative. Id. He was still taking Zoloft but not on a regular basis. Id.

On July 7, 2011, Plaintiff told Dr. Cooper that he was worried that he had missed work one day because he overslept, and he was afraid that he would lose his job. (Tr. 815). On July 14, 2011, Plaintiff told Dr. Cooper that he lost his job due to "constant lateness." (Tr. 816). Plaintiff also recounted conflict with his girlfriend. Id. After several arguments, Plaintiff reported getting along somewhat better with his girlfriend on July 21, 2011. (Tr. 817). Dr. Cooper noted that Plaintiff seemed less depressed and anxious. Id.

On July 18, 2011, Plaintiff met with Ms. Gagnon for a psychiatric medication follow-up, which was largely normal, other than Plaintiff exhibiting anxiety and concerns about the future. (Tr. 670). Plaintiff claimed that he had only one anger outburst with his girlfriend, but that he did get agitated easily. Id. On August 29, 2011, Plaintiff told Ms. Gagnon that he had no recent anger outbursts, and he was working hard to control his temper. (Tr. 671).

On August 11, 2011, Plaintiff told Dr. Cooper that he was only getting $59.00 a week in unemployment benefits, which was not enough to live on. (Tr. 818). He said he made more than that working on a garbage truck through the labor pool. Id. On August 25, 2011, Plaintiff told Dr. Cooper that he found another part-time job. (Tr. 820). Dr. Cooper noted that Plaintiff appeared to be upbeat and talkative. Id.

On September 14, 2011, Plaintiff went to the Immunology Center at The Miriam Hospital for follow-up on his HIV infection. (Tr. 691). Dr. Beckwith indicated that Plaintiff reported that he was feeling well, but had some right elbow pain and fatigue at night. Id. Plaintiff was taking Zoloft and one other psychiatric medication for depression and anxiety. Id.

On October 4, 2011, Ms. Gagnon filled out a Mental Residual Functional Capacity Assessment form indicating that she felt that Plaintiff had marked limitations in a number of areas: carrying out detailed instructions, working with or near others, making simple work-related decisions and completing a normal workday and workweek. (Tr. 741). She also believed that Plaintiff had moderate limitations in other areas. (Tr. 741-742). Ms. Gagnon also felt that Plaintiff would miss work more than three times a month. (Tr. 746). On October 5, 2011, Dr. Cooper filled out a Mental Residual Functional Capacity Assessment form indicating that he believed Plaintiff had marked limitations in his ability to work and function effectively in the workplace. (Tr. 747-749, 751-753).

On October 6, 2011, Plaintiff told Dr. Cooper that he lost his new job because he overslept. (Tr. 823). Plaintiff reported that he was nervous about his approaching hearing for SSI benefits. Id. On October 4, 2011, Plaintiff told Ms. Gagnon that he was anxious about losing his job and that the date of his SSI hearing was approaching. (Tr. 832).

On December 21, 2011, Plaintiff went to the Immunology Center at The Miriam Hospital for follow-up on his HIV infection. (Tr. 843). Dr. Beckwith indicated that Plaintiff reported feeling well overall, but he experienced fatigue at night. (Tr. 843-844). On examination, Plaintiff displayed a normal mood and normal affect. (Tr. 844).

On February 15, 2012, Plaintiff told Ms. Gagnon that he lost another job. (Tr. 838). Plaintiff reported that he was unable to keep jobs because he has difficulty following rules and avoiding impulsive behaviors, such as stealing money. Id. Plaintiff also reported that he showed up late for work and had difficulty with "follow through and authority." Id. He was working hard to control his temper. Id. He had stopped taking medications due to several missed and rescheduled appointments but was planning to start taking them again. Id. Ms. Gagnon noted that Plaintiff's mental status was normal except for anxiety and concern about his future. Id. On March 19, 2012, Ms. Gagnon noted that Plaintiff's daughter was born, and that he was worried about the future, and his ability to support the baby, given his inability to keep a job. (Tr. 839).

### A.    The ALJ's Decision

The ALJ decided this case against Plaintiff at Step 5. At Step 2, the ALJ found that Plaintiff's anxiety, depression and impulse control disorder were "severe" mental impairments within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 18). She did not find Plaintiff's back impairment and HIV to be severe impairments. Id. The ALJ did not find that any of these impairments, either singly or in combination, met or medically equaled any of the Listings. Id. The ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels subject to several nonexertional limitations related to Plaintiff's mental impairments. (Tr. 19). Plaintiff has no past relevant work. (Tr. 25). At Step 5, the ALJ found

that Plaintiff was not disabled because he was capable of performing a number of available unskilled positions at the medium, light and sedentary exertional level.  (Tr. 25-26).

## B.    The ALJ Properly Evaluated the Treating Physician's Opinion

Dr. Cooper has been Plaintiff's treating physician since 2010.  The ALJ considered the opinions of Dr. Cooper and concluded that the opinions are "neither controlling nor persuasive." (Tr. 24).  Plaintiff argues that, under the treating physician rule, the opinions of his treating physician, Dr. Cooper, are entitled to controlling weight and that the ALJ erred by failing to afford them such weight.  Plaintiff has shown no error in the ALJ's treatment of Dr. Cooper's opinions.

Because a treating physician is typically able to provide a detailed longitudinal picture of a patient's impairments, an opinion from a treating source is generally entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence of record.  20 C.F.R. § 404.1527(d); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors").  The amount of weight to which a treating source opinion is entitled depends in part on the length of the treating relationship and the frequency of the examination.  20 C.F.R. § 404.1527(d)(1).  If the treating physician's opinion is not given controlling weight, the opinion must provide "good reasons" for the level of weight given.  20 C.F.R. § 404.1527(d)(2).

Here, the ALJ made clear that the opinions of Dr. Cooper and Ms. Gagnon were not controlling or persuasive due to the amount of evidence in the record contradictory to their opinions.  (Tr. 24).  In drawing this conclusion, the ALJ appropriately relied upon the Plaintiff's

reported improvement when on medication, Plaintiff's failure to show up for, and cancellation of several appointments, Plaintiff's part-time work, and a statement made by Plaintiff that he could not work more hours because he may be collecting disability benefits. (Tr. 23-24). While the Plaintiff contests having made this statement about disability benefits and claims to have, instead, been making a distinct comment about his hours and a separate comment about benefits, this Court's review of the ALJ's factual findings is not de novo and, so, this Court must defer to such findings if reasonably supported by the record.

While reasonable minds may differ as to the interpretation of this medical evidence, the issue presented in this administrative appeal is not whether this Court would have reached the same conclusion as did the ALJ. "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez-Pagan v. Sec'y of HHS, 819 F.2d 1 (1st Cir. 1987)). Rather, the narrow issue presented is whether the ALJ's findings have adequate support on the record. The ALJ's decision to afford substantial evidentiary weight to the opinions of Dr. Hughes and Dr. Litchman was proper as the ALJ found their opinions to be consistent with the record as a whole and her conclusions are supported by substantial evidence. Id.

### C.    Plaintiff Has Shown No Error in the ALJ's Credibility Determination

The ALJ found that Plaintiff's allegations as to his limitations were not supported by the record and, therefore, were not entirely credible. (Tr. 26). Plaintiff challenges this conclusion and argues that the ALJ failed to identify the evidence upon which her assessment of Plaintiff's credibility was grounded. In making this argument, Plaintiff relies upon Social Security Ruling 96-7p, which includes a declaration that "the determination or decision [of the ALJ] must contain

specific reasons for the finding on credibility...."  Plaintiff argues that the ALJ improperly based her credibility determination on Dr. Cooper's RFC assessment.

When evaluating a claimant's credibility, "an ALJ must consider such factors as the medical signs and findings, medical opinions, her medical history and treatment, her activities of daily living, and the effects of any medications taken by the claimant."  Marshall v. Astrue, CIV. 08-CV-147-JD, 2008 WL 5396295 (D.N.H. Dec. 22, 2008).  In addition, if there is conflicting evidence on such points or if conflicting but reasonable inferences can be drawn from the evidence, "[t]he ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also."  Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez-Pagan v. Sec'y of HHS, 819 F.2d 1 (1st Cir. 1987)).  Finally, when supported by specific findings, "[t]he credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference."  Frustaglia v. Sec'y of HHS, 829 F.2d 192, 193 (1st Cir. 1987).

Here, contrary to Plaintiff's assertion, the ALJ did not rely solely on Dr. Cooper's RFC assessment but appropriately evaluated Plaintiff's credibility and adequately explained the bases for her conclusion.  The ALJ addressed Plaintiff's daily activities, employment history, medical opinions and the record as a whole in determining the Plaintiff's lack of credibility.  (Tr. 22-25). Specifically, in regard to Plaintiff's activities of daily living, the ALJ appropriately considered the facts that Plaintiff lived with his girlfriend, could use public transportation and ride a bicycle, could shop and make a simple meal in the microwave, had no problems bathing or dressing, could clean and do laundry on "good days," could handle finances, went to the library three or four times per week and had been able to work mainly part-time jobs.  (Tr. 23).  In regard to

Plaintiff's employment, the ALJ again placed weight on Plaintiff's statement that he could not work more hours because he may be collecting disability benefits in the future. Id. Further, the ALJ accurately observed that the record suggests that Plaintiff is unemployed "due to reasons other than his impairments." (Tr. 25). Regarding the Plaintiff's mental functioning, the ALJ appropriately considered the opinions and findings of Ms. Gagnon, Dr. Cooper, Dr. Hughes and Dr. Litchman in making her credibility determination, affording substantial evidentiary weight to Dr. Hughes and Dr. Litchman. (Tr. 23-24). Additionally, the ALJ considered the facts that Plaintiff did not seek counseling until after he was diagnosed with HIV, that he had a significant gap in treatment and had been noncompliant with medications at times. (Tr. 23). The ALJ's finding that Plaintiff was not credible, therefore, is supported by substantial evidence in the record.

## VI.    CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for Order Affirming the Commissioner's Decision (Document No. 14) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No . 11) be DENIED. Further, I recommend that Final Judgment enter in favor of Defendant. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
October 2, 2014